IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANNY KENDRELL PEARSALL #292-835 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-13-1840 |
| PATRICIA GOINS-JOHNSON, *WARDEN* | * | |
| Defendant | * | |

\*\*\*\*
**MEMORANDUM OPINION**

Plaintiff, a self-represented prisoner currently housed at North Branch Correctional Institution ("NBCI"), seeks monetary damages against Patuxent Institution's Warden, Patricia Goins-Johnson. He alleges he was denied a shower and recreation for five days, in violation of Division of Correction Directive ("DCD") 145-1.[1] Plaintiff argues that he should not have been subjected to the harsh conditions imposed while Patuxent was on "lockdown" status, which impacted outside recreation periods, visitation, phone privileges and visits to the commissary. ECF 1 at 5.[2] Plaintiff also alleges that he has been transferred from Patuxent to NBCI in retaliation for filing this lawsuit. ECF 5.

Defendant has filed an unopposed[3] Motion to Dismiss or in the Alternative, Motion for Summary Judgment (ECF 11) that shall be treated as a Motion for Summary Judgment. No hearing is needed to resolve the case. See Local Rule 105.6 (D. Md. 2011).

---

[1] Plaintiff also asks that the Warden be fired. ECF 1 at 3. For reasons apparent herein, the request is denied.

[2] Unless otherwise noted, the Court shall cite to the pagination found in the electronic docketing system.

[3] Plaintiff was served with notice of Defendant's filing pursuant to the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). ECF 12. Notice was mailed on October 23, 2013. As of the within signature date, no opposition response has been filed.

**I.     Standard of Review**

Defendant's Motion relies on materials outside the pleadings, and is construed as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion, rather "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in the original) (quoting Fed.R.Civ.P. 56(e)). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party "without weighing the evidence or assessing the witnesses' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

**II      Background and Discussion**

Defendant has provided the following unopposed exhibits and declarations to counter Plaintiff's claims. On May 7, 2013, Patuxent was placed on lockdown status at approximately 12:58 p.m. (Donnelly Decl. 23, ECF 11-2). When an institution is on lockdown, with the exception of a medical emergency, inmates are allowed out of their cells only to shower. (DeShields Decl. ¶ 5, ECF 11-3). Out-of-cell recreation is suspended. (Id.). Under applicable Department of Public Safety and Correctional Services ("DPSCS") regulations, prisoners are afforded an opportunity to bathe at least three times per week. (Directive, Division of Corr. Patuxent Inst., Personal Accommodations for Inmates (Issued January 30, 2013) (No. PATX.080.0011.05(A)(1)), ECF 11-4). During a lockdown, the disciplinary segregation shower schedule is implemented, with showers provided on Mondays, Wednesdays, and Fridays. (DeShields Decl. ¶ 5).

On May 7, 2013, Plaintiff was housed in cell 13L on the C-1 tier. (Id. at ¶ 7). Based on the shower and recreation log, Plaintiff likely should have been given the opportunity to shower on May 7, unless his shower had not been completed before the tier went into lockdown status, at which time the shower schedule converted to a disciplinary segregation schedule. When the lockdown occurred, any prisoner who had not yet had an opportunity to receive a shower before the lockdown began would have to wait to shower until the next day provided under the disciplinary segregation schedule. (Id.).

According to the logbook, Plaintiff was provided with an opportunity to shower on May 10 and 13 at approximately 8:30 a.m. (Id. at ¶ 8). The lockdown ended on May 14 at approximately 4:22 p.m., when Captain Jackson ordered that the tier be released from lockdown and restored to normal operations. (Id. at ¶ 9).

On May 12, 2013, Plaintiff filed a request for administrative remedy ("ARP") with Department of Public Safety and Correctional Services's ("DPSCS") headquarters alleging that for five days, commencing May 7, 2013, he was not provided with out-of-cell recreation time, provided

only one shower, and denied phone, regular commissary, and visitation privileges. (Compl. at 4-6, ECF 1). On May 21, 2013, a memorandum was issued by the DPSCS ARP/Inmate Grievance Office ("IGO") Coordinator indicating Plaintiff's ARP would not be processed at the headquarters level as the grievance should have been submitted first to Patuxent's ARP Coordinator. (Id. at 7).

Patuxent's ARP Coordinator, Sergeant Jackie Jackson, avers that Plaintiff did not submit an ARP to Patuxent concerning the subject matter of this lawsuit. (Sergeant Jackie Cooper Decl., ECF 11-5). This averment is supported by a review of Plaintiff's administrative remedy index, which confirms that there are no entries about complaints of conditions of confinement during a lockdown.[4] (Md. Div. Corr., Admin. Remedy Index for Danny Pearsall, ECF 11-6).

On June 28, 2013, Plaintiff was found guilty of violating rules 104 (use of threatening language), 400 (use of threatening language) and 405 (any exhibition, demonstration, or conveyance of insolence, disrespect, or vulgar language) stemming from a June 19, 2013 incident. (OBSCIS Offender Function Maintain Infractions Data 3, ECF 11-7); (DeShields Decl. at ¶ 11). He was assigned to disciplinary segregation for a term of 90 days and prior to the expiration of that assignment was transferred on July 29, 2013, to North Branch Correctional Institution ("NBCI"). (DeShields Decl. at ¶ 12). Defendant contends that the decision to transfer Plaintiff was a classification decision and was not undertaken in retaliation for his having attempted to submit a grievance or filing suit about the alleged conditions he experienced during the May 2013 lockdown. (Id. at ¶¶ 12 -13).

**III. Analysis**

Plaintiff raises two claims – poor conditions of confinement and retaliatory transfer. With respect to Plaintiff's poor conditions claim, only conditions of confinement that can be said to be

---

[4] IGO Executive Director Scott S. Oakley avers that Plaintiff has not filed a grievance complaining of conditions of confinement during the May 2013 lockdown. (Oakley Decl. at ¶¶ 2-3, ECF 11-8).

cruel and unusual are unconstitutional. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Restrictive or even harsh conditions are "part of the penalty that criminal offenders pay for their offenses against society." Id. Plaintiff has failed to establish that the restrictive conditions he complains of amount to cruel and unusual punishment. To do so, he must show that "the deprivation of [a] basic human need was objectively sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (alteration in the original) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1995)) (internal quotation marks omitted).

First, "if a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment . . . ." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Here, Plaintiff has failed to demonstrate actual injury as a result of the Patuxent lockdown that forms the basis of this suit. Because the inability to shower or partake in out-of-cell recreation for a brief period during a prison lockdown does not amount to a violation of the Eighth Amendment under the objective component of the claim, the Court need not consider whether prison officials acted with a sufficiently culpable state of mind.[5]

Even assuming arguendo that Plaintiff can establish the occurrence of a violation of his Eighth Amendment rights, this portion of the case cannot proceed because Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e requires inmates to fully exhaust their administrative remedies prior to filing a lawsuit. 42 U.S.C. § 1997e(a) (2012); see also Porter v. Nussle, 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Moreover,

---

[5] Plaintiff's allegation that Defendant violated DCD #145-11 is unavailing, as Patuxent Institution is not subject to Division of Correction regulation, and violation of a prison regulation, without more, does not state a federal claim.

exhaustion is required even where the relief sought it not attainable through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The Courts, however, are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

In Maryland, an inmate must first make a request for administrative remedy to the Warden of the institution (commonly referred to as an ARP). Chase v. Peay, 286 F.Supp.2d 523, 529 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). If he is unsatisfied with the result, the inmate may file a first-level appeal to the Commissioner of Corrections, and a final-level appeal to the IGO. Id. "The exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." Id. at 530. Here, Plaintiff has failed to either dispute Defendant's argument that he failed to exhaust administrative remedies or demonstrate that he appealed his grievance all the way to the IGO. Thus, the Court must conclude that Plaintiff did fail to exhaust his remedies as required under the PLRA and dismiss the claim.

Plaintiff's claim of retaliatory transfer fares no better.[6] The transfer of inmates between facilities neither infringes nor implicates a liberty interest within the meaning of the Due Process Clause. Meachum v. Fano, 427 U.S. 215, 224 (1976). Given a valid conviction, an inmate has no liberty interest in being housed in any particular facility or on a particular status so long as the conditions of confinement do not otherwise violate the Constitution. See id.; see also Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994).

---

[6] In Plaintiff's request for relief, he seeks to be removed from disciplinary segregation. At the time of the lockdown, on May 7, 2013, Plaintiff was a general population inmate. (DeShields Decl. at ¶ 10). A review of OBSCIS reveals that Plaintiff was not assigned to disciplinary segregation until he was found guilty at a June 28, 2013 adjustment hearing stemming from a June 19, 2013 incident. (Id.). He was sentenced to a 90-day disciplinary term expiring on September 16, 2013. (Id.). Thus, the request for relief has been rendered moot.

Morover, in Wetzel v. Edwards, 635 F.2d 283 (4th Cir. 1980), the Unites States Court of Appeals for the Fourth Circuit reversed the district court's grant of a preliminary injunction ordering the transfer of an inmate to a medium security prison against the State's position that the inmate warranted housing in a maximum security facility because the informed discretion of prison administrators have long been accorded "wide-ranging deference by the federal courts." Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980) (citing Jones v. N.C. Prisoner's Union, 433 U.S. 119, 126 (1977)).

Additionally, to prove the decision to transfer him was made in retaliation for his exercise of his fundamental right of access to the courts, Plaintiff "must prove that he would not have been transferred 'but for' the alleged reason." McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). "[A] complaint[, however,] which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (internal quotation marks omitted).  Further, prisoner retaliation claims are generally treated with "skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (alteration in the original) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Thus, a prisoner must allege specific facts that support a claim of retaliation, White v. White, 886 F.2d 721, 724 (4th Cir. 1989), and show some adverse impact or injury to his ability to exercise his protected right from the alleged retaliation, Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir.1990)).

Here, Plaintiff fails to allege a single fact to support his retaliation claim, but merely states that he was transferred in retaliation for filing the lawsuit.  Additionally, the record reflects that a classification team decided to transfer Plaintiff following his conviction for a disciplinary infraction. Accordingly, Plaintiff has failed to demonstrate the decision to transfer him to NBCI was made in retaliation for his attempt to submit a grievance concerning the conditions of his confinement.

For the reasons given above, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11) is GRANTED.[7]  A separate Order shall be entered in accordance with this Memorandum Opinion.

July 8, 2014                                                              /s/
                                                              _____
                                                              George L. Russell, III
                                                              United States District Judge

---

[7] For that reason, Defendant's defense of qualified immunity will not be addressed.